IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DANIEL SKIPPER II,**
**Claimant Below, Petitioner**

**FILED**
**November 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-280**        (JCN: 2020018930)

**MOUNTAIN STATE BEVERAGE,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Daniel Skipper II appeals the June 2, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Mountain State Beverage ("MSB") filed a response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming three separate claim administrator's orders which (1) denied the request to add lumbar radiculopathy, low back pain, lumbar spondylosis, and displacement intervertebral disc as compensable conditions in the claim; (2) denied a request to reopen the claim for temporary total disability ("TTD") benefits; and (3) denied a request for referrals to pain management, a neurosurgeon, and a neurologist for testing and treatment for complaints of low back pain, lumbar radiculopathy, and left lower extremity weakness.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Skipper, a delivery driver for MSB, sustained a low back injury on February 11, 2020, when he slipped and fell from a delivery truck. Mr. Skipper presented to MedExpress for treatment, and x-rays of his lumbar spine revealed mild to moderate degenerative changes at L1-L2 through L3-L4. Mr. Skipper returned to MedExpress on February 17, 2020, and reported that his back pain had resolved. The clinical notes indicate that Mr. Skipper had full range of motion in his lumbar spine. By order dated February 26, 2020, the claim administrator held the claim compensable for a low back sprain on a no lost time basis.

---

[1] Mr. Skipper is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. MSB is represented by Jeffrey M. Carder, Esq.

On May 29, 2020, Mr. Skipper returned to MedExpress and complained of lower back pain. Mr. Skipper reported that he had initially felt better, which he attributed to the medications he was taking at the time but stated that the pain had quickly returned and remained until May 28, 2020, when it worsened without reinjury. Examination revealed abnormal range of motion in Mr. Skipper's back and his neurological examination was deemed abnormal. A June 8, 2020, appointment included the same complaints, and MedExpress staff referred Mr. Skipper to physical therapy.

Mr. Skipper underwent an MRI of his lumbar spine on July 27, 2020. The results were compared with a prior MRI done on November 6, 2017, which indicated no major changes. Specifically, the July 27, 2020, MRI revealed degenerative changes and a disc bulge at L5-S1 with some effacement of the fat at the anterior aspects of the right S1 descending nerve root sleeve which was noted to be "essentially unchanged" from the 2017 MRI.

On October 19, 2020, Mr. Skipper returned to MedExpress with continued complaints of low back pain and advised that he had been seen by a neurosurgeon who reviewed the MRI and opined that his continued symptoms were due to a left hip disorder rather than the mild disc problems in his back. MedExpress staff diagnosed a sprain of the ligaments of the lumbar spine and pain in the left hip and referred Mr. Skipper for an orthopedic consultation.

Orthopedic surgeon, Adam Klein, M.D., examined Mr. Skipper's left hip and lumbar spine MRIs and issued a report on November 13, 2020, opining that there was nothing to surgically correct. Dr. Klein opined, "He is going to have to cope with stiffness by daily stretching and strengthening[,] [b]ut there is no surgically correctable problem nor image identified trauma."

On September 28, 2021, David L. Soulsby, M.D., issued an independent medical evaluation ("IME") report regarding Mr. Skipper. Dr. Soulsby diagnosed a lumbar sprain/strain and left hip pain of uncertain etiology and assessed 3% whole person impairment resulting from the compensable injury.

Mr. Skipper began treating with Sarah Curry, M.D., in December of 2021. Dr. Curry diagnosed lumbar radiculopathy and low back pain. She referred Mr. Skipper to see a pain management specialist and requested an MRI. Mr. Skipper underwent an MRI of his lumbar spine on February 8, 2022, and multilevel intervertebral disc disease and degenerative changes of the lumbar spine were noted. On February 21, 2022, Mr. Skipper was examined by Jason Kidd, PA-C. Mr. Kidd diagnosed lumbar spondylosis, arthropathy of lumbar facet joint, spinal stenosis of lumbar region, and stenosis of intervertebral foramina.

Mr. Skipper presented to Zaid Al-Qudah, M.D., a neuromuscular medicine physician, on March 24, 2022, and complained of left leg pain and weakness. Dr. Al-Qudah noted that Mr. Skipper's MRI of the lumbar spine "did not show much." Dr. Al-Qudah also opined that Mr. Skipper showed poor effort on the exam and that he could not accurately assess his strength. Dr. Al-Qudah assessed subjective left leg weakness and ordered an EMG to assess for radiculopathy versus neuropathy. The EMG results indicated that both lower extremities were normal and there was no evidence of lumbosacral radiculopathy or large fiber peripheral neuropathy.

Mr. Skipper returned to see Dr. Curry on May 4, 2022, and reported that he was developing a left foot drop, and that his back pain and left leg pain continued to progress. Dr. Curry diagnosed lumbar radiculopathy, chronic low back pain, lumbar spondylosis, and displacement of lumbar intervertebral disc without myelopathy. A Diagnosis Update form was executed by Dr. Curry, wherein she requested that lumbar radiculopathy, low back pain, lumbar spondylosis, and displacement of intervertebral disc be added as compensable conditions in the claim. She noted that following Mr. Skipper's injury, evaluation, and testing revealed a lumbar disc bulge, neural foraminal narrowing, and central canal stenosis at L4-L5. Dr. Curry indicated that these findings were present on the February of 2022 MRI but were not present on the 2017 MRI, which predated the injury. Further, Dr. Curry opined that Mr. Skipper's examination was consistent with lumbar radiculopathy, likely resulting from the disc bulge caused by the injury.

Dr. Curry also requested referrals for pain management, neurosurgery, neurology, and related testing and treatment due to Mr. Skipper's complaints of low back pain, lumbar radiculopathy, and left lower extremity weakness. Lastly, Dr. Curry assisted Mr. Skipper in completing a TTD reopening application, indicating that he experienced progression of left leg weakness and muscle mass and progression of pain. Dr. Curry noted that Mr. Skipper was temporarily and totally disabled from February of 2020 through the present.

On June 7, 2022, the claim administrator issued two orders denying Dr. Curry's request to reopen the claim for TTD benefits and denying her request to add lumbar radiculopathy, low back pain, lumbar spondylosis, and displacement of intervertebral disc as compensable conditions in the claim, citing Dr. Soulsby's IME report. Mr. Skipper protested these orders to the Board.

Mr. Skipper testified via deposition on June 8, 2022. Mr. Skipper testified that following his injury, he was seen by both a spine and hip specialist, neither of whom was able to help him with his pain. Mr. Skipper acknowledged that he had a disc bulge "from years and years back" but stated that it never bothered him prior to the injury. Mr. Skipper also acknowledged having an MRI of his lumbar spine performed around November of 2017, explaining that he thought he had pulled a muscle and participated in physical therapy, which resolved his symptoms. On cross-examination, Mr. Skipper claimed that both the bulging disc and the pulled muscle had been in his upper back.

3

On July 11, 2022, the claim administrator issued a third order, which denied Dr. Curry's request for referrals to pain management, a neurosurgeon, a neurologist, and related testing and treatment, again citing Dr. Soulsby's IME report. The claim administrator further noted that the claim was only compensable for a lumbar spine/strain and that Mr. Skipper had been found to have reached MMI with regard to that injury. Mr. Skipper also protested this order to the Board.

On January 24, 2023, Jonathan Luchs, M.D., authored an Age of Injury analysis in which he stated that he reviewed Mr. Skipper's 2022 lumbar MRI and concurred with the primary reader's findings of multilevel degenerative disc disease. Dr. Luchs noted evidence of disc desiccation, disc space narrowing, disc bulges, endplate remodeling, endplate osteophyte formation, as well as thickening ligamentam flavum and facet arthropathy resulting in levels of narrowing, all of which Dr. Luchs stated appeared to be chronic.

By order dated June 2, 2023, the Board affirmed the claim administrator's (1) June 7, 2022, order, which denied Dr. Curry's request to reopen the claim for TTD benefits; (2) June 7, 2022, order, which denied the request to add lumbar radiculopathy, low back pain, lumbar spondylosis, and displacement of intervertebral disc as compensable conditions in the claim; and (3) July 11, 2022, order, which denied Dr. Curry's request for referrals to pain management, a neurosurgeon, a neurologist, and related testing and treatment.

In considering *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016),[2] *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022),[3] and

---

[2] Syl. Pt. 3 of *Gill* sets forth that:

[a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

236 W. Va. at 738, 783 S.E.2d at 858.

[3] In *Moore*, the Supreme Court of Appeals of West Virginia explained that:

[a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously

(continued . . .)

4

*Blackhawk Mining LLC v. Argabright*, ___ W. Va. ___, ___ S.E.2d ___, 2023 WL 3167476 (Ct. App. 2023),[4] the Board concluded that the diagnoses requested by Dr. Curry were not attributable to the compensable injury. The Board discussed Mr. Skipper's preexisting lumbar radiculopathy diagnosis, his history of pain and treatment related to his lumbar spine, including the 2017 MRI results which showed mild degenerative issues, and his participation in a pain clinic prior to the compensable injury. The Board further noted that Mr. Skipper's symptoms following the compensable injury did not continuously manifest, as he reported that his symptoms had resolved approximately one week following the injury and he did not seek treatment for three months thereafter.

The Board also found that the evidence of record did not indicate that the requested conditions were acute, traumatic conditions resulting from the compensable injury. The Board noted that the MRI results demonstrated that the conditions were chronic, as did the Age of Injury analysis performed by Dr. Luchs. While Dr. Curry had opined that Mr. Skipper's lumbar radiculopathy had resulted from a disc bulge attributable to the compensable injury, the Board found that her conclusion was not supported by the evidence of record.

In sum, the Board concluded that "[t]he evidence does not establish that the compensable injury caused the claimant to have lumbar radiculopathy, lumbar spondylosis, or displacement of intervertebral disc," nor did the compensable injury cause them to become symptomatic. The Board also noted that pain is a symptom, not a diagnosis, and could not be added to the claim. As such, the Board found that the claim administrator had

> manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

247 W. Va. at 294, 879 S.E.2d at 781, syl. pt. 5.

[4] In *Argabright*, this Court explained that:

> [a] preexisting condition itself does not become compensable, only the discrete new injury. *Moore* reaffirmed and expanded on the holding in *Gill* and therefore the holdings in both cases must be considered together. When read in unison, *Gill* and *Moore* do not render preexisting injuries compensable. Compensability is limited only to discrete new injuries and disabilities that manifest following the compensable injury.

2023 WL 3167476, at *3.

5

not erred in denying the addition of these conditions to the claim. Because the request to reopen the claim for TTD benefits and the request for referrals were related to these conditions, the Board likewise found that the claim administrator had not erred in denying these requests. Mr. Skipper now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Skipper argues that the Board erred in denying Dr. Curry's request to add lumbar radiculopathy, lumbar spondylosis, or displacement of intervertebral disc to the claim when the evidence indicates that these conditions resulted from the compensable injury. Mr. Skipper argues that Dr. Curry was in a better position to provide an opinion as to the causality of the requested conditions and any resulting treatment. Dr. Curry examined him and provided a detailed opinion as to Mr. Skipper's history, the development of his symptoms following the compensable injury, and the progression of his symptoms thereafter, and ultimately opined that the requested conditions were related to his compensable injury. For example, Mr. Skipper notes that Dr. Curry opined that his disc bulge was not apparent on the 2017 MRI of his lumbar spine but was shown on the 2022 MRI, demonstrating that it was caused by the compensable injury. Mr. Skipper also argues that Dr. Curry requested authorization for referrals and treatment and to reopen the claim for TTD benefits due to his ongoing issues.

According to Mr. Skipper, the Board erred in relying on Dr. Soulsby's opinion when he incorrectly determined Mr. Skipper had reached MMI despite his continued symptoms. Mr. Skipper also argues that the Board erred in finding that the conditions were not

compensable under *Moore* because his symptoms did not appear and continuously manifest following the injury. Mr. Skipper avers that his symptoms did appear and continuously manifest but were temporarily treated with a strong pain reliever. In sum, Mr. Skipper argues that Dr. Curry provided her opinion regarding the relationship between Mr. Skipper's injury and his ongoing symptoms, the injuries observed through the MRI, and the Diagnosis Update form, and the Board erred in disregarding her opinion in favor of Dr. Soulsby's opinion. We disagree.

Here, Mr. Skipper has failed to demonstrate that the Board was clearly wrong in affirming the claim administrator's order denying the additional diagnoses of lumbar radiculopathy, low back pain, lumbar spondylosis, and displacement of intervertebral disc in the claim; denying the petition to reopen the claim for TTD benefits; and denying the request for authorization for referrals and treatment related add lumbar radiculopathy, low back pain, lumbar spondylosis, and intervertebral disc displacement. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we are unable to conclude that the Board erred in affirming the claim administrator's orders denying the request to add lumbar radiculopathy, low back pain, lumbar spondylosis to the claim; denying the petition to reopen the claim for TTD benefits; and denying the request for authorization for referrals and treatment related add lumbar radiculopathy, low back pain, lumbar spondylosis, and intervertebral disc displacement.

The standard for an additional compensable condition is the same as for compensability. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). As noted above, "[c]ompensability is limited only to discrete new injuries and disabilities that manifest following the compensable injury." *Argabright*, 2023 WL 3167476, at *3. Said another way, a "preexisting condition itself does not become compensable, only the discrete new injury." *Id.*

Here, the Board found that the evidence established that lumbar radiculopathy, lumbar spondylosis, and intervertebral disc displacement diagnoses were not caused by the compensable injury. While Mr. Skipper argues that Dr. Curry's opinion definitively establishes that his lumbar radiculopathy, lumbar spondylosis, and intervertebral disc displacement diagnoses were caused by his compensable injury, we find that the evidence does not support such an assertion. Contrary to Mr. Skipper's claim, his disc bulge and lumbar radiculopathy preexisted the claim. Per the 2020 MRI report, Mr. Skipper had a disc bulge at L5-S1, and the report indicated that "[t]his is essentially unchanged from the study done on November 6, 2017." Further, the 2017 MRI report indicated that Mr. Skipper

7

had been diagnosed with lumbar pain with radiculopathy, and other medical records indicated that he had previously participated in a pain management clinic for chronic back pain. Dr. Luchs performed an Age of Injury analysis and opined that the MRIs demonstrated that Mr. Skipper's conditions were chronic in nature. Moreover, neither post-injury MRI was interpreted as showing any acute injury, and the EMG showed no evidence of radiculopathy. Given this evidence, we conclude that the Board was not clearly wrong in finding that the requested conditions were not caused by the compensable injury as they clearly preexisted the claim and, per *Argabright*, cannot be held compensable. Mr. Skipper has failed to demonstrate that any of the requested diagnoses are discrete new injuries that can be added to the claim.

To the extent that Mr. Skipper argues that low back pain should have been added to the claim, we note that the Supreme Court of Appeals has repeatedly stated that pain is a symptom, not a diagnosis, and cannot be added to the claim. *See Harpold v. City of Charleston*, No. 18-0730, 2019 WL 1850196, at *3 (W. Va. Apr. 25, 2019) (memorandum decision) (holding that left knee pain is a symptom, not a diagnosis, and therefore cannot be added to a claim).

We likewise find that the Board did not err in denying the request for a referral to pain management, a neurosurgeon, and a neurologist, and for testing and treatment related to Mr. Skipper's complaints of low back pain, lumbar radiculopathy, and left lower extremity weakness. West Virginia Code § 23-4-3(a)(1) (2005) provides that the claim administrator must provide medically related and reasonably required "[s]ums for health care services, rehabilitation services, durable medical and other goods, and other supplies." Here, the Board determined that Dr. Curry's request was based upon her diagnosis of lumbar radiculopathy, which was not compensable, and, therefore, the request for authorization for referrals and treatment based on that diagnosis was neither medically related nor reasonably required. We agree and find no error in the Board's decision in this regard.

Lastly, we find that the Board was not clearly wrong in affirming the claim administrator's order denying the request to reopen the claim for TTD benefits. In order to reopen a claim for TTD benefits, a claimant must show an aggravation or progression of a compensable condition or facts not previously considered. *See* West Virginia Code § 23-5-2 (2005) and § 23-5-3a (2022). Here, the Board found that in completing the reopening application, Dr. Curry listed lumbar radiculopathy, low back pain, lumbar spondylosis, and displacement of intervertebral disc, which are not compensable. Therefore, the Board determined that the claim administrator did not err in denying the reopening application based on those diagnoses. We agree. The Board was not clearly wrong in its decision.

For the foregoing reasons, we affirm the Board's June 2, 2023, order.

Affirmed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen